IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 24, 2007

**EDWARD L. WILLIAMS v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Knox County**
**No. 80700     Richard R. Baumgartner, Judge**

**No. E2006-02408-CCA-R3-PC - Filed October 17, 2007**

Following a jury trial, the petitioner, Edward L. Williams, was convicted of premeditated first degree murder and especially aggravated robbery. The trial court imposed consecutive sentences of life for the murder conviction and twenty-two years for the especially aggravated robbery conviction. On direct appeal, this court remanded for entry of an amended judgment reflecting a sentence of life with the possibility of parole and deleting any reference to a merger of the premeditated murder count and the felony murder count. The court further ordered that the sentences run concurrently rather than consecutively. The judgment of the trial court was otherwise affirmed. *State v. Edward L. Williams,* No. E2002-00325-CCA-R3-CD, 2003 WL 22462533 (Tenn. Crim. App. at Knoxville, Oct. 31, 2003), *perm. app. denied* (Tenn. Dec. 19, 2005). The petitioner filed a timely petition for post-conviction relief which the post-conviction court subsequently denied after an evidentiary hearing. The petitioner now appeals. In this appeal, the petitioner contends that his trial counsel was ineffective. Following a thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Edward L. Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kenneth F. Irvine, Jr. and G. Scott Green, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I. BACKGROUND**

On direct appeal, this court summarized the relevant facts of the case as follows:

This case arises from the robbery and murder of twenty-two-year-old Theonda Williams on February 16, 1999. The defendant was fourteen years old at the time. Although the defendant and the victim have the same last name, they were not related.

Frank Williams, the brother of the victim, testified that on the evening of February 16, 1999, he was at the victim's residence with the victim, the victim's girlfriend, Tamisha Shervington, the defendant, the defendant's brother, and Ms. Shervington's mother. He stated the victim and the defendant were drinking alcohol and smoking marijuana. Mr. Williams testified that at approximately 11:05 p.m., he asked the victim to drive him to his residence, while the defendant also asked the victim to drive him to another destination. He stated that prior to entering the vehicle, several men drove up to the residence; the defendant retrieved a revolver from his pocket; and the men drove away.

Mr. Williams testified the victim drove a white Oldsmobile with a "nice" stereo. The victim and the defendant argued regarding the type of music to play, but neither made any threats during this time. He testified the victim did not possess a firearm that evening. He further testified that upon arriving at his residence, the victim then left with the defendant.

Tamisha Shervington testified the defendant was a neighbor, and that the victim became friends with the defendant. She testified that on February 16, 1999, between midnight and 1:00 a.m., the victim, Frank Williams, and the defendant left her residence in the victim's white Oldsmobile. She stated the vehicle contained a compact disc player with speakers in the trunk. She further stated that when she last saw the vehicle, it was not damaged, and the stereo was intact and operational.

Marcus Thomas testified that on February 17, 1999, after speaking to the defendant's sister, Tiffany Jones, he drove her around the Mechanicsville area of Knoxville, in his blue Honda Accord searching for the defendant. He stated they observed the victim's car with a flat tire and bullet hole in the driver's side window parked in front of a house. He parked his vehicle behind the car, and the defendant exited the house minutes later.

Mr. Thomas testified Tiffany Jones informed the defendant that a news program had reported that the victim was dead. The defendant then explained he had been searching for the victim earlier that day and observed the victim's vehicle parked on Boyd's Bridge Pike. The defendant stated that when he saw no one inside the vehicle, he drove the vehicle around the area searching for the victim.

Mr. Thomas stated the defendant retrieved articles of clothing from underneath the seats of the vehicle. The defendant then attempted to open the trunk of the vehicle with a key. However, the defendant explained the lock was broken, and the trunk would not open. Mr. Thomas testified the defendant then moved the vehicle to another location and removed clothing and compact discs from the vehicle.

Mr. Thomas testified he drove the defendant and his sister to the defendant's residence where they were stopped by several police officers. He stated that when the officers activated their blue lights, the defendant instructed him not to stop because he was "on the run." The defendant also instructed his sister to hold a box of bullets. Mr. Thomas testified that upon consenting to a search of his vehicle, the officers retrieved a firearm, a box of bullets, and a set of keys which did not belong to him.

Officer Felix Voss of the Knoxville Police Department testified that upon retrieving the white Oldsmobile, he observed that the radio was missing, the driver's side window was damaged, and the trunk appeared to have been "pried open." Officer Daniel Crenshaw testified that fingerprints lifted from the passenger side interior window of the vehicle matched the defendant's fingerprints. Blood was discovered on the interior driver's side door within a foot of a bullet hole.

Officer Tony Willis testified he was dispatched to Robert Huff Road where he observed the victim's body lying face down in a ditch on the side of the road. Officer Willis testified he and Detective Bennie French went to the defendant's residence and observed the defendant sitting in the back seat of the blue Honda Accord. Upon taking the defendant into custody and obtaining consent to search the vehicle, the officer found a .38 caliber pistol with five rounds in the area where the defendant had been sitting, a box of .38 ammunition in the floorboard, and a set of keys. Officer Thomas Evans testified the firearm discovered in the blue Honda was a .38 caliber revolver which contained five shells.

Detective Bennie French testified that upon taking the defendant into custody, the defendant waived his Miranda rights and made a statement. The defendant admitted he shot the victim while on Boyd's Bridge Pike. He stated he believed the victim intended to harm him because he "could see it in his eyes" and the victim "came up on [him]." He indicated he did not see the victim with a firearm and never informed the officers that the victim attacked him with a speaker.

Detective French testified he interviewed Tiffany Jones, who stated that the defendant and the victim had argued and were "talking about violence to each other." She informed the detective that when the officers approached the blue Honda, the defendant attempted to give her a box of ammunition, but she laid them on the floor

on the front passenger's side. She stated the defendant also attempted to give her a set of keys, but she placed them in between the seats of the vehicle.

TBI Agent Don Carman, an expert in firearms identification, testified the firearm found by the officers was a double-action .38 caliber revolver. He explained an individual could fire the revolver in single-action mode, but he or she must first cock the hammer before pulling the trigger. He stated approximately three and one-half pounds of pressure was required to pull the trigger in single-action mode, while approximately twelve pounds of pressure was required to pull the trigger in double-action mode. Agent Carman opined that once the gun was fired, a second shot could not be accidental. He stated he also tested a .38 caliber Winchester bullet taken from the victim's body and concluded the bullet was fired from the revolver discovered in the Honda.

Dr. Sandra Elkins, the medical examiner, testified that on February 17, 1999, she reported to a crime scene on Robert Huff Road where she observed the victim's body lying face down with his arms outstretched over his head and his pants pulled below his knees. Dr. Elkins stated the victim was five feet, eight inches tall and weighed 140 pounds. She further stated the victim had a blood-alcohol level of .13, and there were no drugs found in his system.

Dr. Elkins conducted an autopsy of the victim's body and discovered two gunshot wounds. She stated one of the bullets entered the right side of the victim's head and exited through the other side. Based upon the gunshot residue found embedded in the skin around the entrance wound, Dr. Elkins estimated the gun was fired from a distance of twelve to twenty-four inches from the victim's head. Based upon the gunshot residue found on the victim's shirt around the chest wound, Dr. Elkins estimated the gun was fired from a distance of twelve inches or less from the body. Dr. Elkins further opined either of the wounds would have been fatal.

Tiffany Jones, the defendant's sister, testified that approximately one and one-half weeks prior to the victim's death, the victim threatened her and the defendant with a firearm. She stated the victim was intoxicated at the time, and when the victim was intoxicated, he suffered from "mood swings." She further stated the victim believed the defendant and the victim's girlfriend were involved in a relationship, and he threatened to kill the defendant on other occasions. She denied the defendant ever threatened the victim. She stated that on the night of February 16, 1999, she was at the victim's residence and observed that he was intoxicated. She further stated she did not see the defendant with a gun that night and that the defendant was afraid of the victim.

Garrett Jones, the defendant's brother, testified that on a prior occasion, the victim threatened the defendant with an automatic weapon while at the victim's

4

residence. He stated the victim had been intoxicated and was "mean" when he drank alcohol.

The defendant testified the victim was a neighbor, whom he occasionally visited. He stated that on one occasion, the victim, who was intoxicated, threatened him with a gun.

The defendant testified that on February 16, 1999, between 11:00 p.m. and midnight, he went to the victim's residence and asked the victim to drive him to a friend's house. He stated the victim was intoxicated and continued to drink alcohol while driving. The defendant testified that after dropping Frank Williams off at his residence, they drove down Boyd's Bridge Pike where the victim accused him of having a relationship with his girlfriend. The victim became upset and came at the defendant with a speaker. The defendant stated he was afraid and produced a gun from his pocket. The defendant testified he then fired two consecutive shots, the first of which hit the victim's chest. He maintained he "didn't mean to shoot" but was afraid for his life.

The defendant testified that after he shot the victim, he placed the victim's body on the side of the road and drove the vehicle to Mechanicsville in order to "get away from the scene." He stated another man later took the stereo from the vehicle. He further stated Mr. Thomas attempted to open the trunk of the victim's vehicle with a crowbar and then took the keys.

The jury convicted the defendant of premeditated first degree murder and especially aggravated robbery.

*Williams,* 2003 WL 22462533 at *1-4.

## II. POST-CONVICTION HEARING

At the post-conviction hearing, trial counsel testified that he had worked as an attorney for ten years and that eighty-five percent of his cases were criminal defense matters. He stated that he had previously handled first degree murder cases. Trial counsel recounted that he had fully investigated the case, which included an examination of the state's case against the petitioner, the forensic evidence from inside the victim's car, and the petitioner's confession.

Trial counsel testified that the state had a strong case against the petitioner. Specifically, trial counsel stated:

This case didn't have a lot of holes in it, as I could find out. We had a confession. He was caught with the weapon that was used in the shooting. Witnesses put him at or near the scene. They put him with the person right before

the shooting, and like I said, then we had a videotaped confession. It wasn't the best case I've ever seen.

Trial counsel stated that he had discussed and agreed on a trial strategy with the petitioner to attack the state's case, "every chance he got." Trial counsel succeeded in having the petitioner's confession suppressed unless and until the petitioner testified at trial, in which case it would be introduced. Trial counsel testified that prior to trial, no decision had been made as to whether or not the petitioner would testify.

Trial counsel and the petitioner made the decision to let the petitioner testify on his own behalf after the testimony of several supporting defense witnesses hurt, rather than helped the petitioner's case. The stated goal was to argue self-defense and try to resolve inconsistencies in the testimony of the preceding defense witnesses. However, trial counsel stated he was aware that if the petitioner testified, he would have to admit to shooting the victim twice, which would cause other problems for the petitioner's case.

The petitioner, through post-conviction counsel, argued that trial counsel chose the wrong trial strategy. Specifically, petitioner asserted that trial counsel should not have attacked the state's case in hopes of proving the petitioner was not the shooter when the weight of the evidence and petitioner's own confession indicated the opposite. Petitioner argued that trial counsel should have conceded that petitioner was the shooter and argued instead that his actions were undertaken in self-defense. Petitioner argued that trial counsel erred by first asserting that the petitioner was not the shooter and then subsequently arguing that the petitioner did shoot the victim. Petitioner argued that by adopting these contradicting theories, trial counsel resorted to inconsistent theories of the case that undermined the petitioner's defense and caused it to ultimately be ineffective.

Petitioner further argued that if trial counsel had initially asserted a theory of self-defense and attempted to convince jurors that he deserved something less than first degree murder, such as voluntary manslaughter, the weight of the culpable evidence against the petitioner could have been mitigated. The petitioner argued that the victim, an older individual, had threatened the petitioner before with a weapon, that there had been an argument in the vehicle, and that the victim had hit the petitioner with a speaker to which the petitioner reacted "spontaneously under those circumstances" in an act of self-defense.

The post-conviction court denied relief and determined that trial counsel's strategy of "attacking each and every element of the state's case" was not ineffective assistance of counsel. The court accredited the testimony of trial counsel and noted that trials are a "a fluid matter," and decisions to change strategies or to argue alternative theories are frequently employed. Furthermore, the court also noted that the jury was presented with first degree murder and lesser-included charges and was able to evaluate and weigh the evidence as it saw fit. After specifically addressing the petitioner's allegations, the court found that the petitioner failed to prove his allegations by clear and convincing evidence and thereby denied relief.

6

## III. ANALYSIS

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is de novo with a presumption that the findings are correct. *Id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

In order to establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense, rendering the outcome unreliable or fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 697. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id.* In considering claims of ineffective assistance of counsel, "[w]e address not what is prudent or appropriate, but only what is constitutionally compelled." *United States v. Cronic*, 466 U.S. 648, 665 n. 38 (1984).

On appeal, the petitioner contends that he received the ineffective assistance of his trial counsel. In particular, the petitioner claims that trial counsel was ineffective in his choice of trial strategy by not conceding that petitioner was the shooter of the victim and instead arguing that the petitioner's actions were undertaken spontaneously, in self-defense. The petitioner submits that trial counsel's decision to first attack the state's evidence at every opportunity, and then attempt to argue self-defense once the petitioner took the stand, resulted in a strategy that was inconsistent and undermined any chance the petitioner had to mitigate the weight of the evidence against him.

7

Upon review, it is clear that the record does not preponderate against the post-conviction court's findings. The post-conviction court, in rendering its judgment, found that it is a frequent and often-employed strategy to argue alternative theories of a case. Further, the post-conviction court noted in its ruling that the jury was presented with the first degree murder charge and lesser-included-offenses, and had the option to weigh the petitioner's arguments that he was not the shooter, or in the alternative, acted only in self-defense. It is well-settled in Tennessee that alternative theories of a case may be presented to the jury. Tenn. Code Ann. § 40-18-112; *see also State v. Young,* No. 01C01-9605-CC-00208, 1998 WL 258466 at *5 (Tenn. Crim. App. at Nashville, May 22, 1998). Therefore, the actions of trial counsel were not deficient. Under the test set forth in *Strickland,* both prongs must be met, and if petitioner fails to prove one prong, relief may be denied. Because the petitioner has failed to demonstrate that trial counsel's actions were deficient under the first prong of the *Strickland* test, he is thereby unable to prove that there was any resulting prejudice and our analysis need not proceed any further. Accordingly, we conclude that the petitioner has failed to show either deficient performance by counsel or resulting prejudice, and the issue is without merit.

## CONCLUSION

The petitioner has failed to meet his burden of proof regarding his claims of ineffective assistance of counsel and the post-conviction court correctly denied the petition. Therefore, the judgment of the post-conviction court is affirmed.

_____
J.C. McLIN, JUDGE